UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARGO IMPORT EXPORT, LTD.,

                    Plaintiff,            **DEMAND FOR JURY TRIAL**

vs.                                       Case No.  21-_____
                                          Hon.

MEIJER, INC.,
a Michigan for profit corporation,

                    Defendant.
_____

**GASIOREK, MORGAN, GRECO,**
**McCAULEY& KOTZIAN, P.C.**
Donald J. Gasiorek (P24987)
Raymond J. Carey (P33266)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
Rcarey@gmgmklaw.com
_____

## COMPLAINT AND JURY DEMAND

Plaintiff ARGO IMPORT EXPORT, LTD (hereinafter, "Argo", "Argo Import Export" or "Plaintiff")., by and through its attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., files this Original Complaint for Patent Infringement against Defendant MEIJER, INC. ("Meijer" or "Defendant") as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Defendant's infringement of U.S. Patent Number 10,677,397 (hereinafter, the "397 Patent"), U.S. Patent No. 10,697,593(hereinafter, the "593 Patent"), U.S. Patent No. 10,767,819 (hereinafter, the "819 Patent"), U.S. Patent No. 10,816,146 (hereinafter, the "146 Patent"), and U.S. Patent Application No. 17,021,961 (hereinafter, the "961 Patent Application")  (collectively the "Patents" or "Argo Patents"), which were duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") to Argo, copies of which is attached hereto as **Exhibit A**.

2.     Argo Import Export is the owner of the Patents and possesses all rights, title and interest in the Patents, including the rights to enforce the Patents, license the Patents, and sue Defendant for infringement of the Patents and recover past damages.

3.     Plaintiff seeks injunctive relief and monetary damages.

**PARTIES**

4.     Argo Import Export is a for profit corporation organized and existing under the laws of the State of Michigan and maintains its principal place of business at 4366 Karen Lane, Bloomfield Hills, Michigan, 48302 (Oakland County).

5.      Defendant Meijer is a for profit corporation organized and existing under the laws of the State of Michigan, which operates more than 250 supercenters in six states, including Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin, and maintains its corporate offices at 2929 Walker Ave. NW, Grand Rapids, MI 49544 (Kent County).

6.      Based upon information published by Defendant, it ships, distributes, makes, uses, offers for sale, sells, and/or advertises GE supplied or manufactured LED lighting tube devices that infringe Argo Patents pertaining to LED lighting tube technology and methods including, but these may not be limited to: GE Warm White 32W T8/40W T12 Replacement LED Universal Bi-Pin LED light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; GE Cool White 32W T8/40W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; GE Warm White 15W T8/15W T12 Replacement LED Medium Bi-Pin light bulbs" in a variety of lengths, including 18, 24, and 48 inch lengths; GE Cool White 15W T8/15W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; GE Warm White 17W T8/20W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; GE Cool White 17W T8/20W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; and

3

"GE Kitchen and Bath 40 watt T12 LED Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths (collectively, the "Accused Products").

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it involves claims arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, and under the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202.

8.     The Court has personal jurisdiction over Defendant because it maintains offices and facilities and engages in regular and systematic business and other activities within the Eastern District of Michigan and the acts attributed to Defendant that give rise to Plaintiff's claims occurred within the Eastern District of Michigan, throughout the States of Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin, and everywhere else where it conducts business.

9.     More specifically, Defendant directly and/or through its affiliates ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Products for sale within the Eastern District of Michigan, throughout the States of Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin, and everywhere else where it conducts business.

4

10.     Based upon information published by Defendant, it has committed patent infringement within the Eastern District of Michigan, throughout the States of Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin, and everywhere else where it conducts business.

11.     Defendant solicits customers to purchase the Accused Products within the Eastern District of Michigan, throughout the States of Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin, and everywhere else where it conducts business.

12.     Defendant has many customers who have purchased the Accused Products from Defendant who are residents of the State of Michigan within the Eastern District of Michigan.

13.     Venue is proper pursuant to 28 U.S.C. § 1400(b) because Defendant has regular and established places of business in the Eastern District of Michigan where it has committed and continues to commit acts of infringement.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant has a regular and established place of business in the Eastern District of Michigan where it has committed and continues to commit acts of infringement.

## BACKGROUND INFORMATION

15.     Each of the Argo Patents is entitled "LED Lighting Tube Device And Method" and was duly and legally issued by the USPTO after full and fair examination. *See* **Ex. A**.

16.     The 961 Patent Application is a continuation of USPTO Application No. 16/900,111 (the "111 Application"), which was filed on June 12, 2020, now U.S. Patent No. 10,816, 146 (the "146 Patent"); which is a continuation of USPTO Application No. 15/881,328 (the "328 Application"), which was filed on January 26, 2018, now U.S. Patent No. 10,697,593 (the "593 Patent"); which is a continuation of USPTO Application No. 15/725,541 (the "541 Application"), which was filed on October 5, 2017, now U.S. Patent No. 9,989,200 (the "200  Patent"); which is a continuation-in-part of USPTO Application No. 14/887,468 (the "468 Application"), which was filed on October 20, 2015, now U.S. Patent No. 9,810,384 (the "384  Patent"). *See* **Ex. A** at pp. 49.

17.     The 146 Patent traces its priority date back to USPTO Application No. 16/900,111 (the "'111 Application"), which was filed on June 12, 2020, and it was issued after full and fair examination on October 27, 2020. *See* **Ex. A** at pp. 37-38.

18.     The 146 Patent is a continuation of USPTO Application No. 15/881,328 (the "328 Application"), which was filed on January 26, 2018, now U.S. Patent No. 10,697,593 (the "593  Patent"); which is a continuation of USPTO Application No. 15/725,541 (the "541 Application"), which was filed on October 5, 2017, now U.S. Patent No. 9,989,200 (the "200  Patent"); which is a continuation-in-part of USPTO Application No. 14/887,468 (the "468 Application"), which was filed on October 20, 2015, now U.S. Patent No. 9,810,384 (the "384  Patent"). *See* **Ex. A** at pp. 37-38.

19.     The 819 Patent traces its priority date back to USPTO Application No. 16/842,991 (the "'991 Application"), which was filed on April 8, 2020, and it was issued after full and fair examination on September 8, 2020. *See* **Ex. A** at pp. 25-26.

20.     The 819 Patent is a continuation of USPTO Application No. 16/032,674 (the "674 Application"), which was filed on July11, 2018; which is a continuation of USPTO Application No. 15/881,328 (the "328 Application"), which was filed on January 26, 2018, now U.S. Patent No. 10,697,593 (the "593 Patent"); which is a continuation of USPTO Application No. 15/725,541 (the "541 Application"), which was filed on October 5, 2017, now U.S. Patent No. 9,989,200 (the "200   Patent"); which is a continuation-in-part of USPTO Application No. 14/887,468 (the "468 Application"), which was filed on

7

October 20, 2015, now U.S. Patent No. 9,810,384 (the "384  Patent"). *See* **Ex. A** at pp. 25-26.

21.     The 593 Patent traces its priority date back to USPTO Application No. 15/881,328 (the "328 Application"), which was filed on January 26, 2018, and it was issued after full and fair examination on June 30, 2020. *See* **Ex. A** at pp. 13-14.

22.     The 593 Patent is a continuation of USPTO Application No. 15/725,541 (the "541 Application"), which was filed on October 5, 2017, now U.S. Patent No. 9,989,200 (the "200 Patent"); which is a continuation-in-part of USPTO Application No. 14/887,468 (the "468 Application"), which was filed on October 20, 2015, now U.S. Patent No. 9,810,384 (the "384 Patent"). *See* **Ex. A** at pp. 13-14.

23.     The 397 Patent traces its priority date back to USPTO Application No. 16/032,674 (the "'674 Application"), which was filed on July 11, 2018, and it was issued after full and fair examination on June 9, 2020. *See* **Ex. A** at pp. 1-2.

24.     The 397 Patent is a continuation of USPTO Application No. 15/881,328 (the "328 Application"), which was filed on January 26, 2018, now U.S. Patent No. 10,697,593 (the "593  Patent"); which is a continuation of USPTO Application No. 15/725,541 (the "541  Application"), which was filed on

October 5, 2017, now U.S. Patent No. 9,989,200 (the "200 Patent"); which is a continuation-in-part of USPTO Application No. 14/887,468 (the "468 Application"), which was filed on October 20, 2015, now U.S. Patent No. 9,810,384 (the "384 Patent"). *See* **Ex. A** at pp. 1-2.

25.     The 468 Application traces its priority date back to Provisional Application No. 62/065, 959, which was filed with the USPTO on October 20, 2014. *See* **Ex. A** at pp. 2, 14, 26, 38,49.

26.     The LED lighting tube technology and methods that are controlled by the Argo Patents and concomitant 15 inventions pertain to an LED lighting tube comprising:

(A) a heat-dissipating tubular envelope;

(B) which has a LED assembly that includes a substantially flat LED board with an LED array attached to an upper surface of the LED board, an opposite base surface of the LED board entirely and directly affixed to a curved inner surface of the heat-dissipating tubular envelope, and an adhesive layer consisting of a non-insulating adhesive that extends the entire length of the LED assembly between the base surface of the LED board and the curved surface of the heat-dissipating tubular envelope

(C) which provides up to 330 ° arcs of light;

(D) with open ends of each heat-dissipating tubular envelope are closed by end caps;

(E) with an LED board of each heat-dissipating tubular envelope that includes a first end in electrical communication with a first electrical connector and a second end in electrical communication with a second electrical connector;

(F) with the first electrical connector and the second electrical connector of each heat-dissipating tubular envelope that are connectable to an electrical receptacle of a light fixture through the end caps;

(G) with inner space of the heat-dissipating tubular envelope that includes ambient atmosphere and the LED array emits light chosen from the group consisting of white light, pink light, blue light, yellow light, green light, red light, orange light, infrared light, and ultraviolet light; and

(H)  Each heat-dissipating tubular envelope has a diameter chosen from the group consisting of ¼", ½", 5/8", 1", and 1½", and a length chosen from the group consisting of 6", 9", 12", 18", 48", and 96," and it includes a protective film operatively attached to the heat-dissipating tubular envelope.

*See* **Exhibit A**.

10

27.     The Patents were assigned to Argo. *See* **Ex. A** at pp. 1, 13, 25, 37, 49.

28.     Based upon information published by Defendant, it owns, operates, and/or controls the website, www.meijer.com., through which Defendant advertises, offers for sale, sells, and/or otherwise provides the Accused Products to its customers and/or its customers buy the Accused Products from Defendant. *See* **Exhibit B** (Offers for sale of Accused Products from Defendant's website).

29.     Defendant advertises, offers for sale, sells, or otherwise provides the Accused Products to its customers at and through its more than 250 supercenters in six states, including Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin where its customers buy the Accused Products from Defendant. *See* **Exhibit B** (Offers for sale of Accused Products from Defendant's website).

30.     Defendant advertises, offers for sale, sells, or otherwise provides the Accused Products to its customers and the customers buy the Accused products from Defendant in a variety of lumens, color temperatures, diameters, lengths, ad watts, materials (glass or plastic) and other characteristics.

31.     Based upon information published by Defendant, the models of Accused Products that Defendant advertises, offers for sale, sells, or otherwise provides to its customers and which its customers buy from Defendant consist

of GE supplied or manufactured LED lighting tube devices that include, but these may not be limited to: GE Warm White 32W T8/40W T12 Replacement LED Universal Bi-Pin LED light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths;  GE Cool White 32W T8/40W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; GE Warm White 15W T8/15W T12 Replacement LED Medium Bi-Pin light bulbs" in a variety of lengths, including 18, 24, and 48 inch lengths; GE Cool White 15W T8/15W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; GE Warm White 17W T8/20W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; GE Cool White 17W T8/20W T12 Replacement LED Universal Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths; and "GE Kitchen and Bath 40 watt T12 LED Bi-Pin light bulbs in a variety of lengths, including 18, 24, and 48 inch lengths.

32. The GE supplied or manufactured LED lighting tube devices which Defendant advertises, offers for sale, sells, and otherwise provides to its customers consist of the same technology and methods that are controlled by the Argo Patents:

(A) a heat-dissipating tubular envelope;

12

(B) which has a LED assembly that includes a substantially flat LED board with an LED array attached to an upper surface of the LED board, an opposite base surface of the LED board entirely and directly affixed to a curved inner surface of the heat-dissipating tubular envelope, and an adhesive layer consisting of a non-insulating adhesive that extends the entire length of the LED assembly between the base surface of the LED board and the curved surface of the heat-dissipating tubular envelope

(C) which provides up to 330 ° arcs of light;

(D) with open ends of each heat-dissipating tubular envelope are closed by end caps;

(E) with an LED board of each heat-dissipating tubular envelope that includes a first end in electrical communication with a first electrical connector and a second end in electrical communication with a second electrical connector;

(F) with the first electrical connector and the second electrical connector of each heat-dissipating tubular envelope that are connectable to an electrical receptacle of a light fixture through the end caps;

(G) with inner space of the heat-dissipating tubular envelope that includes ambient atmosphere and the LED array emits light chosen from

the group consisting of white light, pink light, blue light, yellow light, green light, red light, orange light, infrared light, and ultraviolet light; and

(H)  Each heat-dissipating tubular envelope has a diameter chosen from the group consisting of ¼", ½", 5/8", 1", and 1½", and a length chosen from the group consisting of 6", 9", 12", 18", 48", and 96," and it includes a protective film operatively attached to the heat-dissipating tubular envelope.

*See* **Exhibit A**.

## COUNT I

### INFRINGEMENT OF ARGO U.S. PATENT NOS. 10,677,397; 10,697,593; 10,767,819; and 10,816,146 and Patent Application No. 17,021,961

33.    Argo re-alleges and incorporates by reference each of the above paragraphs as if reiterated paragraph by paragraph.

34.    Defendant has infringed and continues to infringe the Argo Patents either literally or under the doctrine of equivalents through the sale of the Accused Products to its customers throughout the State of Michigan and everywhere else where it conducts business.

35.    More specifically, Defendant has infringed and continues to infringe one or more claims of the Argo Patents because it ships, distributes, imports, offers for sale, sells, and/or advertises the Accused Products and its customers buy the Accused Products through its website and at and through its

14

more than 250 supercenters in six states, including Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin and everywhere else where it conducts business.

36.     Defendant's Accused Products infringe the Argo Patents because the GE supplied or manufactured LED lighting tube devices which Defendant advertises, offers for sale, sells, and otherwise provides to its customers consist of the same technology and methods that are controlled by the Argo Patents:

(A) a heat-dissipating tubular envelope ("uses an innovative glass design that diffuses heat and light more evenly"), *compare* Figures 1 and 2: Images 1and 2 with **Exhibit A**;



Figure 1: Image 1



Figure 2: Image 2

(B) which has a LED assembly that includes a substantially flat LED board with an LED array attached to an upper surface of the LED board, an opposite base surface of the LED board entirely and directly affixed to a curved inner surface of the heat-dissipating tubular envelope, and an adhesive layer consisting of a non-insulating adhesive that extends the entire length of the LED assembly between the base surface of the LED board and the curved surface of the heat-dissipating tubular envelope ("The lamp's micro-designed driver is located within the tube end cap," resulting in seamless light from end to end) , *compare* Figures 1-3: Images 1-3 with **Exhibit A**;



Figure 3: Image 3

(C) which provides up to 330 ° arcs of light;

(D) with open ends of each heat-dissipating tubular envelope are closed by end caps **(**"The lamp's micro-designed driver is located within the tube end cap," resulting in seamless light from end to end), *compare* Figures 1-4: Images 1-4 with **Exhibit A**;



Figure 4: Image 4

(E) with an LED board of each heat-dissipating tubular envelope that includes a first end in electrical communication with a first electrical connector and a second end in electrical communication with a second electrical connector ("The lamp's micro-designed driver is located within the tube end cap," resulting in seamless light from end to end), *compare* Figures 1-4: Images 1-4 with **Exhibit A**;

(F) with the first electrical connector and the second electrical connector of each heat-dissipating tubular envelope that are connectable to an electrical receptacle of a light fixture through the end caps, *compare* Figures 1-4: Images 1-4 with **Exhibit A**;

(G) with inner space of the heat-dissipating tubular envelope that includes ambient atmosphere and the LED array emits light chosen from the group consisting of white light, pink light, blue light, yellow light,

green light, red light, orange light, infrared light, and ultraviolet light,

*compare* Figures 1-5: Images 1-5 with **Exhibit A**;



Figure 5: Image 5

and

(H)  Each heat-dissipating tubular envelope has a diameter chosen from

the group consisting of ¼", ½", 5/8", 1", and 1½", and a length chosen

from the group consisting of 6", 9", 12", 18", 48", and 96," and it includes

a protective film operatively attached to the heat-dissipating tubular envelope, *compare* Figures 1-6: Images 1-6 with **Exhibit A.**



Figure 6: Image 6

37.      Defendant intentionally infringed the Argo Patents by advertising and selling the Accused Products consisting of the GE supplied or manufactured LED lighting tube devices through Defendant's website, www.meijer.com, and at and through its more than 250 supercenters in six states, including Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin. *See* **Exhibit B** (Offers for sale of Accused Products from Defendant's website).

20

38.    Defendant has continued to intentionally infringe the Argo Patents by continuing to advertise and sell the Accused Products consisting of the GE supplied or manufactured LED lighting tube devices through Defendant's website, www.meijer.com., and at and through its more than 250 supercenters in six states, including Michigan, Ohio, Indiana, Kentucky, Illinois, and Wisconsin. *See* **Exhibit B** (Offers for sale of Accused Products from Defendant's website).

39.    Defendant's aforesaid activities have been without authority and/or license from Argo.

40.    As a direct and proximate result of Defendant's past and continuing infringement of the Argo Patents, it has sustained and is continuing to sustain damages that include damages for past, present and future profits and lost past, present and future business opportunities, lost royalties, loss value of and use of revenue or money it otherwise would have generated through sale of its products, interest, costs, and attorneys' fees.

**WHEREFORE,** Plaintiff ARGO IMPORT EXPORT, LTD, respectfully requests that this Honorable Court grant the following remedies in its favor and against Defendant Meijer, Inc.:

A.      A judgement declaring that Defendant has infringed one or more claims of the Argo Patents, either literally and/or under the doctrine of equivalents;

B.      A judgement declaring that Defendant continued to infringe one or more claims of the Argo Patents after receipt of Notice from Argo that it was infringing its patents and its post-suit knowledge of the Argo Patents;

C.      A judgement awarding damages to be paid by Defendant to Plaintiff adequate to compensate Plaintiff for Defendant's past infringement and any continuing or future infringement up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

D.      A permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from further acts of infringement with respect to any one or more of the claims of the Argo Patents;

E.      A declaration by the Court that this is an exceptional case and an

award to Plaintiff of reasonable attorneys' fees and costs in accordance with 35

U.S.C. § 285; and

F.      Such further relief as the Court deems just and proper.

**GASIOREK MORGAN,**

By:   */s/Ray Carey*

Donald J. Gasiorek (P24987)
Raymond J. Carey (P33266)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001
rcarey@gmgmklaw.com

Dated: October 18, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARGO IMPORT EXPORT, LTD.,

              Plaintiff,

                                   Case No.  21-_____

vs.                                 Hon.

MEIJER, INC.,
a Michigan for profit corporation,

              Defendant.
_____

**GASIOREK, MORGAN, GRECO,**
**McCAULEY& KOTZIAN, P.C.**
Donald J. Gasiorek (P24987)
Raymond J. Carey (P33266)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001
Rcarey@gmgmklaw.com
_____

## DEMAND FOR TRIAL BY JURY

Plaintiff ARGO IMPORT EXPORT, LTD., demands a trial by Jury.

                                        Respectfully submitted,
                                        **GASIOREK MORGAN,**
                                        By:___*/s/Ray Carey*_____
                                        Donald J. Gasiorek (P24987)
                                        Raymond J. Carey (P33266)
                                        Attorney for Plaintiff
                                        30500 Northwestern Hwy, Ste. 425
                                        Farmington Hills, MI 48334
                                        (248) 865-0001
Date:  October 18, 2021                        rcarey@gmgmklaw.com